UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

STANLEY BRUMFIELD                                    CIVIL ACTION

VERSUS                                               NO. 23-3522

STATE OF LOUISIANA                                   SECTION "I"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing § 2254 Cases. Upon review of the entire record,[1] I have determined that a federal evidentiary hearing is unnecessary.[2] For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL BACKGROUND

Petitioner, Stanley Brumfield, is a convicted inmate incarcerated in the Rayburn Correctional Center in in Angie, Louisiana.[3] On December 4, 2015, Brumfield was charged by a bill of information in Terrebonne Parish with felon in possession of a firearm in violation of LA. REV. STAT. § 14:95.1.[4] Brumfield pled not guilty on December 16, 2015.[5] The Louisiana First Circuit Court of Appeal summarized the established facts as follows:

---

[1] The State electronically filed the record at ECF No. 12.

[2] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. *Id*. § 2254(e)(2)(B).

[3] ECF No. 1 at 1.

[4] ECF No. 12 at 312, Bill of Information, 12/4/15.

[5] *Id.* at 220, Min. Entry, 12/16/15.

On August 23, 2015, in the 1100 block of Lafayette Street in Houma, Louisiana, two women were outside their home watching their children play. They observed defendant jump onto the trunk of a car near them, then jump to the hood of the car. According to the witnesses, defendant had a gun in his hand at the time and fired the weapon at someone. Defendant was subsequently arrested and charged with being a felon in possession of a firearm. At trial, defendant stipulated to having a prior conviction for a crime of violence within 10 years of the incident.[6]

Brumfield proceeded to a jury trial on April 18 through 20, 2017, and was found guilty as charged.[7] The trial court denied Brumfield's post-trial motions on September 20, 2017.[8] On November 8, 2017, the trial court sentenced Brumfield to period of incarceration of eighteen years at hard labor without the benefit of probation, parole or suspension of sentence.[9] The State filed a multiple bill of information alleging Brumfield to be a multiple offender.[10] On September 19, 2018, the state trial court found Brumfield to be a second felony offender.[11] On that same date, the court vacated Brumfield's previous sentence and sentenced Brumfield to a term of imprisonment of thirty years at hard labor and without the benefit of probation or suspension of sentence.[12] The trial court denied Brumfield's motion arguing that the sentence was excessive.[13]

On direct appeal, Brumfield's appointed counsel claimed that the sentence was excessive and that the trial court erred when it denied Brumfield's motion to reconsider his sentence.[14] Brumfield filed a pro se brief in which he asserted three assignments of error: (1) defective bill of

---

[6] *State v. Brumfield*, 2019 KA 0279, 2019 WL 4855336, at *1 (La. App. 1st Cir. Oct. 1, 2019); ECF No. 12 at 260, 1st Cir. Opinion, 2019 KA 0279, 10/1/19; *see also* ECF No. 12 at 69, 313.

[7] ECF No.12 at 225-27, Trial Mins., 4/18/17; *id.* at 228-29, Trial Mins., 4/19/17; *id.* at 230-31, Trial Mins., 4/20/17; *id.* at 67, Verdict, 4/20/17; *id.* at 471-653, Trial Tr., 4/18/17; *id.* 654-870, Trial Tr., 4/19/17; *id.* at 871-1005, Trial Tr., 4/20/17.

[8] *Id.* at 233, Min. Entry, 9/20/17; *id.* at 77, Motion for New Trial, 5/1/17; *id.* at 79, Motion for Post-Verdict Judgment of Acquittal, 5/1/17.

[9] *Id.* at 234, Sentencing Mins., 11/8/17.

[10] *Id.* at 2-3, Information for Habitual Offender, 8/14/18.

[11] *Id.* at 237, Multiple Offender Hearing & Sentencing Mins., 9/19/18.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 271-79, Appellate Brief, 2019 KA 0279, 4/1/19.

information; (2) the trial court erred in denying his post-trial motions; and (3) insufficient evidence.[15]

On October 1, 2019, the Louisiana First Circuit Court of Appeal affirmed Brumfield's conviction and sentence.[16] The court determined that the trial court did not abuse its discretion in imposing a thirty-year term of incarceration.[17] The court found that Brumfield had notice as to which underlying felony the State was referring to in the bill of information.[18] Finally, the court found that, considering the parties' stipulation that less than ten years had passed since Brumfield's previous conviction, and the evidence presented, a rational trier of fact could have found all of the essential elements of the offense of possession of a firearm by a convicted felon were proven beyond a reasonable doubt.[19] On July 31, 2020, the Louisiana Supreme Court denied Brumfield's related writ application without assigning reasons.[20]

On February 1, 2021, Brumfield filed a pro se application for post-conviction relief asserting the following claims:[21]

> (1) the bill of information was deficient in that it failed to include the specific prior conviction;
>
> (2) insufficient evidence;

---

[15] *Id.* at 301-11, Pro Se Supplemental Appeal Brief, 2019 KA 0279, 5/22/19. Brumfield initially identified his three assigned errors as:
  (1) The trial court erred when it denied defendant Motion for New Trial
  (2) The trial court erred when it denied defendant Motion for Post-Verdict Judgement of Acquittal
  (3) The State failed to prove the 10-year cleansing period.
*Id.* at 305. He elaborated on these errors in his argument section, which is the basis for the text list.

[16] *Brumfield*, 2019 WL 4855336, at *1-4; ECF No. 12 at 259-67, 1st Cir. Opinion, 2019 KA 0279, 10/1/19.

[17] *Id.* at *1-2; ECF No. 12 at 260-63, 1st Cir. Opinion, 2019 KA 0279, 10/1/19.

[18] *Id.* at *3; ECF No. 12 at 264-65, 1st Cir. Opinion, 2019 KA 0279, 10/1/19.

[19] *Id.* at *3-4; ECF No. 12 at 265-67, 1st Cir. Opinion, 2019 KA 0279, 10/1/19.

[20] *State v. Brumfield*, 300 So. 3d 395 (La. 7/31/20); ECF No. 12 at 314-25, La. S. Ct. Writ Application, 2019-KO-01801, 7/13/20 (signed 6/6/20).

[21] ECF No. 12 at 326-401, First Uniform Application for Post-Conviction Relief, 2/1/21 (signed August 17, 2020).

(3) ineffective assistance of counsel in failing to advance an insufficient evidence claim on appeal; and

(4) he was deprived of his right to full voir dire examination when the trial court dismissed a prospective juror because he was a college student.

At a hearing on March 23, 2022, the trial court denied Brumfield's application for post-conviction relief.[22]    On July 18, 2022, the Louisiana First Circuit Court of Appeal denied Brumfield's related writ application without assigning reasons.[23]    On January 18, 2023, the Louisiana Supreme Court denied Brumfield's related writ application finding he failed to show lower court error.[24]

## II.    FEDERAL HABEAS PETITION

On August 11, 2023, Brumfield filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenged his current custody.[25]    Brumfield asserts the following claims: (1) insufficient evidence; (2) ineffective assistance of counsel in failing to advance an insufficient evidence claim on appeal; and (3) he was deprived of his right to full voir dire examination when the trial court dismissed a prospective juror because he was a college student.[26]

The State filed a response in opposition to Brumfield's petition and conceded that it was timely filed and that his claims are exhausted.[27]    The State asserts that Brumfield's claims are meritless.[28]

---

[22] ECF No. 12 at 455-62, Post-Conviction Hearing Tr., 3/23/22; *id.* at 1033, Minute Entry, 3/23/22.

[23] *State v. Brumfield*, 2022 KW 0557, 2022 WL 2807868 (La. App. 1st Cir. July 18, 2022); ECF No. 12 at 470, La. App. 1st Cir. Order, 2022 KW 0557, 7/18/22.

[24] *State v. Brumfield*, 355 So. 3d 609 (La. 2/14/23); ECF No. 12 at 1006-07, La. Sup. Ct. Order, 2022-KH-01299, 2/14/23.

[25] ECF No. 1.

[26] ECF No. 1 at 4; ECF No. 1-1 at 5.

[27] ECF No. 10-1 at 4-10.

[28] *Id.*

## III.    LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996,[29] and applies to habeas petitions filed after that date.[30]  The AEDPA therefore applies to Brumfield's petition filed on August 11, 2023.[31]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court.  In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[32]  Here, the State does not seek to time bar Brumfield's federal habeas petition, nor does it claim that state court review has not been exhausted or that any enumerated claim is in procedural default.[33]  This federal habeas court is thus not barred from reviewing Brumfield's claims.

Nevertheless, for the reasons that follow, Brumfield is not entitled to federal habeas relief.

---

[29] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[30] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[31] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Brumfield dated his signature August 11, 2023.  ECF No. 1 at 5; ECF No. 1-1 at 14.

[32] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[33] ECF No. 10-1.

A. **Standards of a Merits Review**

Sections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law in federal habeas corpus proceedings.[34] Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[35]  The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1).  The determination receives deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"[36]  The United States Supreme Court has clarified the § 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[37]

---

[34] *Nobles*, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

[35] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).

[36] *Penry v. Johnson*, 215 F.3d 504, 507 (5th Cir. 2000) (brackets in original) (quoting *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000)), *aff'd in part, rev'd in part on other grounds*, 532 U.S. 782 (2001); *Hill*, 210 F.3d at 485.

[37] *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Penry*, 532 U.S. at 792-93 (2001) (citing *Williams*, 529 U.S. at 405-06, 407-08); *Hill*, 210 F.3d at 485.

The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."[38]  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"[39]

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"[40]  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[41]  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[42]

## IV.    **INSUFFICIENT EVIDENCE (CLAIM 1)**

Brumfield claims that there was insufficient evidence to support his conviction under LA. REV. STAT. § 14:95.1.  Specifically, he claims that there was no evidence to support the "previous conviction of an enumerated felony" and "absence of the 10-year statutory limitation period."[43]

---

[38] *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)); *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington*, 562 U.S. at 103).

[39] *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)); *Shoop*, 139 S. Ct. at 509 (habeas courts must rely "strictly on legal rules that were clearly established in the decisions of this Court at the relevant time.")

[40] *Price v. Vincent*, 538 U.S. 634, 641 (2003) (brackets in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (citations omitted)).

[41] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[42] *Price*, 538 U.S. at 641 (*quoting Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

[43] ECF No. 1-1 at 5-9.

The State responds that this claim is meritless. It claims that the parties' stipulation, which was read to the jury, relieved the prosecution of the burden of presenting evidence regarding the stipulated facts and that the state courts' rejection of Brumfield's sufficiency of the evidence claim was not contrary to or an unreasonable application of Supreme Court precedent.

Brumfield raised this claim on direct appeal. In denying the claim, the Louisiana First Circuit Court of Appeals found:

### PRO SE ASSIGNMENT OF ERROR #3: INSUFFICIENT EVIDENCE

In his third pro se assignment of error, defendant contends that the State failed to prove beyond a reasonable doubt that the 10-year cleansing period imposed by La. R.S. 14:95.1(C) had not elapsed from the completion of his sentence on the aggravated battery conviction and the commission of the instant offense.

A conviction based on insufficient evidence cannot stand, as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); see also **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660; **State v. Kitts**, 2017-0777 (La. App. 1st Cir. 5/10/18), 250 So.3d 939, 948. The **Jackson** standard of review, incorporated in La. Code Crim. P. art. 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.

Defendant asserts that in order to prove that the 10-year cleansing period has not elapsed, the State must present evidence of the date of termination of his sentence for aggravated battery. He points out that the actual date of the completion of the punishment for the aggravated battery charge is not set forth in the stipulation submitted into evidence.

In proving every element of the offense of felon in possession of a firearm, the State must prove not only the felony conviction, but the date of completion of the punishment. **State v. Dennis**, 569 So.2d 566, 568 (La. App. 1st Cir. 1990). A stipulation, however, has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact. **State v. Simmons**, 2000-35 (La. App. 5 Cir. 7/25/00), 767 So.2d 860, 861. Stating that "[a] stipulation, like any other evidence, speaks for itself[,]" the court in **State v. McKnight**, 2009-1186 (La. App. 4th Cir. 4/14/10), 37 So.3d 1050, 1053, writ denied, 2010-1012 (La. 6/25/10), 38 So.3d 356, reversed the defendant's conviction because the stipulation failed to

address the 10-year cleansing period.  In **State v. Coleman**, 2009-0106 (La. App. 3d Cir. 10/07/09), 20 So.3d 1163, 1166, underline writ denied, 2009-2424 (La. 6/4/10), 38 So.3d 298, the court likewise found proof of the 10-year cleansing period element lacking and reversed defendant's conviction under La. R.S. 14:95.1 because "[t]he wording of the stipulation did not address the ten-year cleansing period, and no other evidence established that it had not passed."  Such is not the case in the matter before us.

In the joint stipulation, the parties expressly stated that fewer than 10 years had elapsed between the completion of sentence from that conviction [of aggravated battery] and the instant offense's date of commission.  On the morning of the trial, the trial court informed the jury that the State and defendant stipulated that on July 28, 2005, defendant was convicted of aggravated battery, which is a crime of violence, and that less than 10 years had elapsed from the completion of his sentence, probation, or parole, and the time of the present alleged offense.  Hence, the parties' stipulation expressly addressed the issue of the 10-year cleansing period.  Therefore, considering that stipulation and the evidence presented, we find any rational trier of fact could have found all of the essential elements of the offense of possession of a firearm by a convicted felon were proven beyond a reasonable doubt.  This assignment is without merit.[44]

The Louisiana Supreme Court denied relief without assigning reasons.[45]

A federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.[46]  As the Supreme Court explained:

[T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[47]

---

[44] *Brumfield*, 2019 WL 4855336, at *3-4 (footnote omitted); ECF No. 12 at 265-67, La. 1st Cir. Opinion, 2019 KA 0279, 10/1/19.

[45] *State v. Brumfield,* 300 So. 3d 395 (La. 7/31/20).

[46] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).

[47] *Id.* at 319 (emphasis in original) (internal quotation marks and citations omitted).

Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."[48]

To determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.[49]  The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.[50]  A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.[51]  Thus, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.[52]  All credibility choices and conflicting inferences must be resolved in favor of the verdict.[53]  Again, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"[54]

---

[48] *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman*, 566 U.S. at 651.

[49] *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n.16).

[50] *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial.") (quoting *Jackson*, 443 U.S. at 324).

[51] *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

[52] *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

[53] *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

[54] *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.[55]  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Brumfield was charged with and convicted of possession of a firearm by a convicted felon. Under Louisiana law, the offense of being a previously convicted felon in possession of a firearm is defined in part as follows: "It is unlawful for any person who has been convicted of ... a crime of violence as defined in R.S. 14:2(B) which is a felony ... to possess a firearm or carry a concealed weapon."[56]  To support a conviction for possession of a firearm by a convicted felon, the State must establish the following: (1) possession of a firearm; (2) a prior conviction for an enumerated felony; (3) the absence of the ten-year statutory limitation period; and (4) the general intent to commit the crime.[57]

As to the second element, "[t]he State must prove the [prior] felony conviction and that ten years has not elapsed since the date of completion of punishment."[58]  Louisiana law provides that the cleansing period for a felon in possession "requires a determination of a ten-year period between the defendant's date of 'completion of sentence, probation, parole or suspension of sentence' and the time of the present possessory offense."[59]

---

[55] *Perez*, 529 F.3d at 594; *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).

[56] LA. REV. STAT. § 14:95.1.

[57] *State v. Husband*, 437 So. 2d 269, 271 (La. 9/2/83); *State v. Caffrey*, 15 So. 3d 198, 202 (La. App. 5th Cir. 5/12/09); *State v. Ray*, 961 So. 2d 607 (La. App. 2d Cir. 6/27/07); *State v. Robert*, 956 So. 2d 750 (La. App. 2d Cir. 5/9/07).

[58] *State v. Knight*, 738 So. 2d 1179, 1181 (La. App. 5th Cir.6/30/99) (citations omitted).

[59] *State v. Ostrom*, 980 So. 2d 890, 895 (La. App. 2d Cir. 4/9/08).

As to the fourth element, general intent is all that is required, and it may be inferred from the circumstance of the event and proved by direct or circumstantial evidence.[60]  General intent also may be proved through either actual or constructive possession of a firearm.[61]

Brumfield does not challenge his possession of a firearm or his intent to commit the crime. Instead, Brumfield focuses solely on the State's failure to show that he had a prior conviction for an enumerated felony and that the cleansing period had not expired.  The trial transcript, however, demonstrates that the evidence was more than sufficient to support the jury's verdict that Brumfield was a previously convicted felon in possession of a firearm and that ten years had not elapsed since the completion of his sentence, probation, or parole, and the time of the present alleged offense.

On April 20, 2017, the parties entered into a written stipulation that Brumfield had been previously convicted of aggravated battery on July 28, 2005 and that less than ten years elapsed from the completion of his sentence, probation and parole to the time of the commission of the offense in this case.[62]  At trial, the trial court read the parties' stipulation to the jury:

> Now before we have opening statements, there has been a stipulation between the State and the Defense.  A stipulation is an agreement by both sides that they agree on something, okay; and therefore, you must accept it as a fact.  They don't have to prove it at the trial, okay.  This is not uncommon.  We do that to save some time, and if it's undisputed, it's undisputed.
>
> So the stipulation that the State and the Defense have agree upon is this, and I'll read the whole thing.
>
> Stipulation: The State and the Defendant stipulate that on July 28, 2005, Stanley James Brumfield was convicted of aggravated battery in the matter entitled, quote, *State of Louisiana versus Stanley Brumfield*, unquote, 17th Judicial District Court, Docket No. 414,845.

---

[60] *State v. Brokenberry*, 942 So.2d 1209 (La. App. 2d Cir. 2006); *State v. Culp*, 17 So.3d 429 (La. App. 2d Cir. 2009).

[61] *State v. Law*, 46 So. 3d 764, 770 (La. App. 2d Cir. 8/11/10); *State v. Jamerson*, 1 So. 3d 827 (La. App. 2d Cir. 1/14/09).

[62] ECF No. 12 at 69, 313, Stipulation, 4/20/17.

That aggravated battery is a crime of violence punishable by imprisonment at hard labor.

And they stipulate that less than ten years has elapsed from the completion of his sentence, probation, or parole, and the time of the present alleged offense.

All right, so this stipulation has been filed into the record in this matter. So I'm going to give it back to the clerk to put into the record, okay.[63]

As the trial court explained to the jurors, the parties' stipulation relieved the prosecution of its burden of proving the facts to which the parties stipulated.[64] As such, the second and third elements of the offense were satisfied, and the prosecution only needed to prove beyond a reasonable doubt the first and fourth elements of the crime. As noted, Brumfield does not contest the sufficiency of the evidence as to these elements. In any event, the evidence was more than sufficient for a reasonable jury to find general intent and possession of a firearm.

Christina Smith Jackson testified that on August 23, 2015 she saw Brumfield chase and shoot at a man.[65] Jackson explained that she was standing by the passenger door on the driver's side of a vehicle when she saw Brumfield, who was carrying a gun, jump on top of the car and shoot at the victim.[66] Jackson described the gun as "small" with a "circle thing" to put bullets in like a revolver.[67] Jackson was adamant that she saw Brumfield with a firearm.[68] Jackson testified that she heard the shot and that it sounded like a regular firearm.[69]

---

[63] ECF No. 12 at 887, Trial Tr., 4/20/17.
[64] *United States v. Branch*, 46 F.3d 440, 442 (5th Cir. 1995) ("Once a stipulation is entered, even in a criminal case, the government is relieved of its burden to prove the fact which has been stipulated by the parties.") (citation omitted); *State v. Kornahrens*, 2011-1779 (La. App. 1st Cir. 6/8/12), 2012 WL 2061464, at *4 ("A stipulation has the effect of withdrawing a fact from issue and disposing with the need for proof of that fact ... the stipulation disposed wholly of the state's need to produce ... the necessary dates that would prove these predicate DWI convictions fell within the ten-year period...") (citations omitted).
[65] ECF No. 12 at 904-07, Trial Tr., 4/20/15.
[66] *Id.* at 905-07, 912.
[67] *Id.* at 906.
[68] *Id.* at 908, 917.
[69] *Id.* at 908-09.

Tonie Liprie testified that she was standing at the back of the car by the driver's side taillight when she witnessed Brumfield run, jump on top of the car, and shoot the firearm he was carrying.[70]  She described the firearm as small and gray like a revolver with a "round thing" for bullets.[71]  Liprie was similarly adamant that she had seen Brumfield with the gun and had heard the firearm fire.[72]

Officer William Chauvin testified that he responded to the scene and spoke with Jackson, her sister, and Liprie.[73]  Chauvin searched the area but was not able to find any casing or bullet hole.[74]  He explained, however, that casings are not ejected from the cylinder of a revolver when the gun is fired.[75]

Viewing the evidence in the light most favorable to the State, the jury had more than sufficient evidence to establish beyond a reasonable doubt that Brumfield was a felon in possession of a firearm.  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Jackson*.  Brumfield is not entitled to relief as to this claim.

---

[70] *Id.* at 921-922, 931.

[71] *Id.* at 922, 929.

[72] *Id.* at 923-24, 930-31.

[73] *Id.* at 933-35, 938

[74] *Id.* at 935-37, 944.

[75] *Id.* at 935-36, 944.

14

V.    **INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM 2)**

Brumfield alleges ineffective assistance of appellate counsel.  Specifically, he asserts his appellate counsel was ineffective in failing to advance a sufficiency of the evidence claim on appeal.  Brumfield argues that the prosecution failed to introduce into evidence any evidence that he had a prior felony conviction within the ten-year time limitation.[76]

The State responds that Brumfield cannot show prejudice as a result of his appellate counsel's failure to raise a sufficiency of the evidence claim as Brumfield raised the claim himself on direct appeal.

### A.    **State Court Rulings**

In his application for post-conviction relief, Brumfield argued that his counsel was ineffective in failing to raise a sufficiency of the evidence claim on appeal.[77]  The trial court denied the claim.[78]  The Louisiana First Circuit Court of Appeals denied relief without reasons.[79]  The Louisiana Supreme Court denied Brumfield's related writ application finding that he failed to show lower court error.[80]

### 2. **AEDPA Standards and *Strickland***

The issue of ineffective assistance of counsel is a mixed question of law and fact.[81]  Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

---

[76] ECF No. 1-1 at 10-12.

[77] ECF No. 12 at 335, 343-44, Memorandum in Support of Uniform Application for Post-Conviction Relief, 2/1/21.

[78] *Id.* at 460, Post-Conviction Hearing Tr., 3/23/22; *id.* at 1033, Minute Entry, 3/23/22.

[79] *Brumfield*, 2022 WL 2807868, at *1; ECF No. 12 at 470, La. App. 1st Cir. Order, 2022 KW 0557, 7/18/22.

[80] *Brumfield*, 355 So. 3d at 609; ECF No. 12 at 1007, La. Sup. Ct. Order, 22-KH-1299, 2/14/23.

[81] *Strickland v. Washington*, 466 U.S. 688, 698 (1984); *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

The United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.[82]  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."[83]  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[84]

In deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.[85]  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under *Strickland*, 'that the errors had some conceivable effect on the outcome of the proceeding.'"[86]

On habeas review, the United States Supreme Court has clarified that, under *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[87]  "Even under de novo review, the standard for judging counsel's representation is a most deferential one."[88]  The courts must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance."[89]

---

[82] 466 U.S. at 697.

[83] *Id.* at 687-88.

[84] *Id.* at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

[85] *Kimler*, 167 F.3d at 893.

[86] *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (citation omitted) (quoting *Strickland*, 466 U.S. at 693); *Harrington*, 562 U.S. at 112 (*Strickland* requires a "substantial" likelihood of a different result, not just "conceivable" one.)

[87] *Harrington*, 562 U.S. at 105.

[88] *Id.*

[89] *Strickland*, 466 U.S. at 690.

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right.[90]  The *Strickland* standard for judging performance of counsel also applies to claims of ineffective appellate counsel.[91]  To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.[92]

Effective appellate counsel is not required to assert every nonfrivolous available ground for appeal.[93]  On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal.[94]  Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail.[95]  Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to assert every conceivable issue.[96]

Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if

---

[90] *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

[91] *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997).

[92] *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith*, 528 U.S. at 285-86.

[93] *Green*, 160 F.3d at 1043 (citing *Evitts*, 469 U.S. at 394, 105 S. Ct. 830).

[94] *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

[95] *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit.  As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).

[96] *Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754.

possible, or at most on a few key issues."[97]  Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits the client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions."[98]  As a result, the test to be applied in assessing such a claim is whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal.[99]

Brumfield's counsel was not required to raise every possible claim appearing on the record. Brumfield's appellate counsel raised two issues: (1) the trial court erred in denying Brumfield's motion for reconsideration of sentence; and (2) the sentence was unconstitutionally excessive. Although those claims were ultimately found to be without merit, Brumfield has not shown that his claim of insufficient evidence was clearly stronger.

Notably, while Brumfield's appellate counsel did not raise an issue of insufficiency of the evidence, Brumfield raised the issue himself on direct appeal.[100]  Thus, obviously he cannot show any prejudice as a result of his appellate counsel's failure to raise the issue.  Further, even had Brumfield's appellate counsel raised her own sufficiency of the evidence argument, it is clear that any such argument would have been denied.  Failure to raise a meritless claim on appeal is not deficient performance.[101]

The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.  Brumfield is not entitled to relief as to this claim.

---

[97] *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

[98] *Id.* at 753.

[99] *See, e.g.*, *Diaz*, 228 F. App'x at 427; *accord Smith*, 528 U.S. at 288.

[100] ECF No. 12 at 305, 308-09, Pro Se Supplemental Brief, 2019 KA 029, 5/22/19.

[101] *See Anderson*, 204 F. App'x at 410; *see also, Kossie*, 423 F. App'x at 437.

**VI.**    **VOIR DIRE EXAMINATION (CLAIM 3)**

Brumfield's final claim is that the trial court denied him of his right to full voir dire examination of prospective jurors.  Brumfield claims that the trial court's excusal prior to jury selection of a prospective juror because he was a college student diluted the jury pool without the consent of the parties in violation of due process of law.[102]

The State responds that the state courts' denial of this claim was not contrary to or an unreasonable application of Supreme Court precedent.[103]

Brumfield raise this claim in his application for post-conviction relief.[104]  At the post-conviction hearing, in denying relief as to this claim, the state district court explained:

> In Louisiana, it is routine for judges to excuse certain individuals who are not going to be present at a trial, for example, students, generally, because they're not going to be in the parish during the trial.  If we would have to have a hearing, open court hearing with the attorney and the defendant, on every one of these, it would be burdensome that it would be impossible to do.
>
> Number two, under the law, as y'all know, everyone is entitled to a continuance.  Everybody gets a continuance on a trial duty, on trial, on jury duty; if you want to exercise a continuance, automatic.  So y'all didn't even bring that part up.  He could have or she could have.  So I don't see any harm done.  There was no preferential treatment, there was no harm done to the defendant.  It doesn't make the jury pool any less or more prejudice [sic] one way or the other, so for those reasons motion denied.[105]

The Louisiana First Circuit Court of Appeals denied relief without assigning reasons.[106]

The Louisiana Supreme Court denied Brumfield's related writ application finding that he failed to show lower court error.[107]

---

[102] ECF No. 1-1 at 12-13.
[103] ECF No. 10-1 at 8-10.
[104] ECF No. 12 at 335, 345-46, Memorandum in Support of Application for Post-Conviction Relief, 2/1/21.
[105] *Id.* at 460, Post-Conviction Hearing Tr., 3/23/22.
[106] *Brumfield*, 2022 WL 2807868, at *1; ECF No. 12 at 470, La. App. 1st Cir. Order, 2022 KW 0557, 7/18/22.
[107] *Brumfield*, 355 So. 3d at 609; ECF No. 12 at 1007, La. Sup. Ct. Order, 22-KH-1299, 2/14/23.

On the first day of trial, the clerk, upon pulling of the jury voir dire, announced that Taylor Lippert, a college student, had been excused from the third panel of prospective jurors.[108]  Defense counsel questioned whether college attendance was an acceptable excuse.[109]  The trial responded, "It depends on the judge.  I normally do."[110]  The trial court later explained:

> No. 2 is each judge has their own quirks with reference to some discretionary excuses.  For example, college, Mr. Billiot brought that up.  College students, you know, they might be out of state.  They might be in Natchitoches, they might be in Monroe, they might be in, you know.  And for them to have to travel, miss classes, to me, that's an undue hardship, all right.  So they'll have plenty of time to serve as jurors because they're young, but that's why I typically excuse them if asked.

> I don't want them to come all the way from Shreveport or Monroe or Natchitoches or anywhere else, Baton Rouge.  And sometimes, as you know, trials get bumped and so forth, but it's a hardship, travel expenses to boot.  They might be out of state.[111]

The question of whether a defendant was denied the right to a jury selected from a fair cross-section of the community is a mixed question of law and fact.[112]  This court must determine whether the state courts' denial of relief on this claim was contrary to or an unreasonable application of Supreme Court law.

The Sixth Amendment's guarantee of an impartial jury entitles a criminal defendant to a venire that representing a fair cross-section of the community.[113]  "The Sixth Amendment requirement of a fair cross section on the venire is a means of assuring, not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)."[114]  The law is

---

[108] ECF No. 12 at 507, 512-13, Trial Tr., 4/18/17.

[109] *Id.* at 507.

[110] *Id.*

[111] *Id.* at 512-13.

[112] *United States v. Suggs*, 531 F. App'x 609, 618 (6th Cir. 2013).

[113] *Taylor v. Louisiana*, 419 U.S. 522 (1975); *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) ("The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community.").

[114] *Holland v. Illinois*, 493 U.S. 474, 480 (1990) ("The fair-cross-section venire requirement is ... not

clear that "[d]efendants are not entitled to a jury, jury wheel, pool of names, panel, or venire of any particular composition, and there is no requirement that those bodies 'mirror the community and reflect the various distinctive groups in the population.'[115]"

In order to establish a prima facie violation of the requirement that the venire consist of a fair cross-section of the community, the petitioner must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."[116]   It is the burden of the petitioner to make this showing.[117]   The Fifth Circuit has held that a petitioner's failure to meet any one of the *Duren* elements defeats the fair cross-section claim.[118]

The Supreme Court has not precisely defined "distinctive group," however, it has found characteristics such as race, ethnicity, and gender constitute distinctive groups.[119]   Some courts have found that neither "college students" nor "young adults" are a distinct group cognizable for purposes of the fair cross section requirement.[120]

---

explicit in [the] text, but is derived from the traditional understanding of how an 'impartial jury' is assembled.").

[115] *Hearn v. Cockrell*, 73 F. App'x 79, 2003 WL 21756441, at *1, *6 (5th Cir. June 23, 2003) (citing *Taylor*, 419 U.S. at 538).

[116] *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

[117] *United States v. Aponte-Suarez*, 905 F.2d 483, 492 (1st Cir. 1990).

[118] *United States v. Williams*, 264 F.3d 561, 568-69 (5th Cir. 2001).

[119] *Lockhart v. McCree*, 476 U.S. 162, 174 (1986).

[120] *United States v. Fletcher*, 965 F.2d 781, 782 (9th Cir. 1992) (college students are not a distinct group); *Ford v. Seabold*, 841 F.2d 677, 682 (6th Cir.1988) (rejecting young adults and college students as distinctive groups, but accepting women as a distinctive group); *Johnson v. McCaughtry*, 92 F.3d 585, 592-93 (7th Cir. 1996) (persons ages 18 to 25 are not a distinctive group for fair cross-section purposes); *Davis v. Greer*, 675 F.2d 141, 146 (7th Cir. 1982) ("[y]oung people between the ages of 18 and 21 ... are not a cognizable group or class."); *see also United States v. Jackson*, 204 F. 3d 1118,1999 WL 1330689, at *9 (5th Cir. Dec. 17, 1999) ("Age is not a characteristic which can define a distinctive group in the community for purposes of the fair-cross-section requirement.") (citations omitted).

However, the law is clear that when there is no Supreme Court precedent to control a legal issue raised by a habeas petitioner, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law, and no federal habeas relief is warranted.[121]  Here, Brumfield has not identified – and this Court's independent research has not uncovered – a United States Supreme Court case holding that college students are a distinctive group.

Accordingly, the denial of relief on this issue by the state courts was not contrary to or an unreasonable application of Supreme Court law.  Brumfield is not entitled to federal habeas corpus relief as to this issue.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Stanley Brumfield's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

---

[121] *See Woods v. Donald*, 575 U.S. 312, 317 (2015) (citing Lopez v. Smith, ⸻ U.S. ⸻, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014)) (per curiam) ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be "contrary to" any holding from this Court."); *Wright v. Van Patten*, 552 U.S. 120, 1263 (2008) (quotation omitted) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law."); *Higginbotham v. Louisiana*, 817 F.3d 217 (5th Cir. 2016) (No violation of clearly established law where "the Supreme Court does not appear to have addressed this issue or a 'materially indistinguishable' set of facts"); *Gomez v. Thaler*, 526 F. App'x 355, 359-60 (5th Cir. 2013) (citing *Van Patten*, 552 U.S. at 126) (When no Supreme Court precedent directly addressed the presented issue, it could not be said that the state court unreasonably applied clearly established federal law.).

the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[122]

New Orleans, Louisiana, this _____ 24th _____ day of January, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[122] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)).  *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).